UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLAMIDE SOYINKA, | ) |
|     Plaintiff, | ) 1:19-CV-04691 |
| v. | ) Judge Edmond E. Chang |
| FRANKLIN COLLECTION SERVICE, INC., | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Olamide Soyinka brought this suit against Franklin Collection Service, Inc., alleging violations of the Fair Debt Collection Practices Act (commonly known in debt-collection circles as the FDCPA), 15 U.S.C. § 1692 *et seq.*[1] R. 66, First Am. Compl. Soyinka claims that Franklin falsely implied in a dunning letter that the debt collector intended to sue her to collect on a debt. *Id.* Pending now are Soyinka and Franklin's cross-motions for summary judgment. R. 76, Pl.'s Mot. Summ. J.; R. 81, Def.'s Mot. Summ. J.[2] The Court does not reach the parties' arguments on the merits, however, because the threshold issue of Article III standing requires an evidentiary hearing in this case. For the following reasons, the parties' motions on the merits are

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[2]Although Soyinka's complaint originally proposed a class action, Plaintiff ultimately decided not to seek class certification. R. 59.

terminated without prejudice. The Court orders an evidentiary hearing to address Article III standing.

## I. Background

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates Soyinka's summary judgment motion, Franklin gets the benefit of reasonable inferences; conversely, when evaluating Franklin's motion, the Court gives Soyinka the benefit of the doubt.

Soyinka owed $171.00 on an AT&T consumer utility account. First Am. Compl. ¶¶ 17, 29; R. 66-1, First Am. Compl., Pl.'s Exh. C at 1. When she was unable to pay, the debt went into default. First Am. Compl. ¶ 18. In a letter dated May 7, 2019, Franklin Collection Service attempted to collect the defaulted debt. *Id.* ¶¶ 19–20. In the first paragraph of the letter, Franklin offered a "settlement" and advised Soyinka to contact "your attorney" about Franklin's "potential remedies" and "your defenses":

> YOU HAVE AN OUTSTANDING BALANCE OF 171.00 OWED TO AT&T. IN AN EFFORT TO HELP YOU RESOLVE THIS MATTER WE AGREE TO OFFER YOU A SETTLEMENT OF $119.70. TO ACCEPT THIS OFFER PLEASE SEND PAYMENT OF $119.70. IF YOU ARE NOT PAYING THIS ACCOUNT, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL (888) 215-8961.

First Am. Compl., Pl.'s Exh. C (capitalization in original).

Soyinka brought this action against Franklin under the FDCPA, alleging that Franklin's letter: (1) falsely threatened a potential lawsuit in violation of the FDCPA's ban against false or misleading representations, 15 U.S.C. § 1692e, because

neither Franklin nor its client, AT&T Mobility, truly intended to bring a lawsuit against Soyinka, First Am. Compl. ¶ 42; and (2) deployed an unfair practice in trying to collect the debt in violation of the FDCPA's ban against using unfair means, 15 U.S.C. § 1692f, because it made a false threat of litigation, *id.* ¶ 43.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

But "subject-matter jurisdiction is the first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). The plaintiff bears the burden of establishing subject matter jurisdiction, which includes Article III's requirement of standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

### III. Analysis

By way of background, the "primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices." *Schlaf v. Safeguard Property, LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (cleaned up).[3] The FDCPA's provisions thus focus on "eliminat[ing] abusive debt collection practices by debt collectors," "insur[ing] that those debt collectors who refrain from using abusive debt collections practices are not competitively disadvantaged," and "promot[ing] consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Soyinka maintains that Franklin's letter violated two of these provisions: 15 U.S.C §§ 1692e and 1692f.

In broad strokes, Soyinka asks this Court to grant summary judgment in her favor because it is undisputed that Franklin did not intend to take legal action against her, Franklin did not think that the original creditor intended to take any legal action, and the dunning letter on its face would mislead an unsophisticated consumer into thinking legal action was imminent. R. 77, Pl.'s Br. at 1. According to Soyinka, because the dunning letter was clearly misleading on its face, there is no

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

genuine dispute that Franklin made a false threat in violation of the FDCPA. *Id.* at 5–10. Franklin responds that at this stage of the litigation—having moved on from the pleading stage—Soyinka needed to provide extrinsic evidence showing how consumers perceive the language of the letter and, absent that type of evidence, Franklin is instead entitled to summary judgment. R. 82-1, Def.'s Br. at 1–2.

But before reaching the merits there is a significant threshold issue, one which this Court has an independent obligation to address: subject matter jurisdiction. There is a question as to whether Soyinka has standing, and standing is a fundamental issue of subject matter jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### A. Standing

Federal courts must police the constitutional limitations on their jurisdiction throughout a case. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986). Neither Soyinka nor Franklin brief the issue of standing in this case with much detail, but the requirement of standing "is jurisdictional and cannot be waived." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020); *see* Pl.'s Br. at 15, Def.'s Br. at 19–22. To establish standing to sue in federal court, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

**1. Injury in Fact**

The parties disagree on whether Soyinka suffered an injury in fact, which is the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Soyinka argues that she suffered a concrete, particularized harm as a result of Franklin's misconduct. Pl.'s Br. at 15; R. 88, Pl.'s Reply at 15–16. According to Soyinka, this harm includes both emotional distress and accompanying physical symptoms: anxiety, nervousness, hyperventilation, depression, and sleeplessness. First Am. Compl. ¶¶ 7–10; Pl.'s Br. at 15; R. 78, PSOF ¶¶ 15–19, R. 78-4, PSOF Pl.'s Exh. 3, Soyinka Supp. Decl. ¶¶ 8–11.

Franklin, on the other hand, maintains that Soyinka has failed to show a concrete injury. Def.'s Br. at 19–22. Franklin argues that Soyinka's supplemental affidavit and deposition testimony conflict with one another, making the claims of sleeplessness and hyperventilation unreliable. R. 92, Def.'s Reply at 14. Without the physical symptoms, including sleeplessness and hyperventilation, Soyinka's only evidence of harm would be emotional distress, and "purely psychological harm" of this kind does not suffice to establish Article III standing. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015).

Injury-in-fact analysis for the purposes of standing often happens at the pleading stage, when the Court is limited to the complaint's "general factual allegations of injury resulting from the defendant's conduct" to evaluate standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). This case has reached the summary-judgment phase, however, and so the burden increases. At this stage of the case, the plaintiff

6

must "suppl[y] evidence of 'specific facts' that, taken as true, show each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).

### 2. Evidence of Injury

Franklin has, in essence, challenged the truth of the jurisdictional facts needed in this case to establish standing. *See* Def.'s Reply at 14–15. And a "factual dispute about the court's adjudicatory competency must be resolved before the court can address the merits (if the court has jurisdiction to do so)." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020). The purpose of summary judgment is to weed out non-meritorious claims ahead of trial, but a case cannot proceed to trial if the court is not satisfied that it has jurisdiction.

On the question of standing, the two critical sources of evidence in the record at this stage are Soyinka's supplemental affidavit and her deposition testimony. Soyinka Supp. Decl.; R. 78-4, PSOF, Pl.'s Exh. 3, Soyinka Dep. Soyinka included the supplemental affidavit as part of her statement of material facts, but the affidavit is dated March 8, 2021—before any motions for summary judgment had been filed and *before* she was deposed. Soyinka Supp. Decl. To evaluate whether Soyinka's supplemental affidavit and deposition contradict one another, it is helpful to review what she said in those sources one right after the other. Soyinka's supplemental affidavit notes both physical and emotional harm:

> As a result of Defendant's threat to sue me, I experienced emotional distress.

7

> Specifically, after reading Defendant's threat, I became anxious and nervous. I started breathing rapidly and hyperventilating due to the anxiety. This persisted for several minutes until I was able to calm down. For the next two days after reading the Collection Letter, whenever I thought about Defendant's threat to sue me, I would become overwhelmed with feelings of anxiety, and I would start breathing rapidly and hyperventilating. These episodes of anxiety and hyperventilating only stopped occurring after I spoke with my sister two days after reading the Collection Letter, who was able to calm me down over the phone and instructed me to contact an attorney.
>
> In between episodes of intense anxiety and hyperventilation, I would become depressed due to my fears that Defendant would sue me. These feelings of depression also persisted until I spoke with my sister, who was able to comfort me and calm me down.
>
> In addition, on the day that I read the Collection Letter, that night I was unable to sleep. My thoughts were racing and I was anxious as a result of Defendant's threat to sue me. I was not able to sleep at all that night.

Soyinka Supp. Decl. ¶¶ 8–11. These are the same allegations that appear in the amended complaint. First. Am. Compl. ¶¶ 7–10.

In Soyinka's deposition, however, she did not mention physical manifestations of the stress. She repeatedly testified that she felt scared and anxious. R. 83-1, DSOF Def.'s Exh. 1, Soyinka Dep. at 23:23–24:2 ("And I was so scared, like, because I don't know what was going to happen, and I had anxiety when I received this letter back then."), *id*. at 24:19–25:4 ("Yeah, I was just scared when I saw the letter … So I was so scared … and I'm scared. I have anxiety … So I was just a little bit depressed back then."), *id*. at 25:18–20 ("[B]ut the one that is not correct is contact your lawyer because I'm scared."), *id*. at 28:16–17 ("That is what I see in the letter that I'm scared of."), *id*. at 30:22–23 ("I didn't contact them because I'm scared. I'm having anxiety."), *id*. at 31:3 ("I'm just scared. I didn't do anything."), *id*. at 32:2–3 ("Like I said earlier,

8

I said I'm afraid. I'm scared.), *id.* at 32:24–33:1 ("[B]ut I'm scared when I read the letter …"), *id.* at 33:22–24 ("I didn't say I don't want to pay, but for what they wrote in the letter, that's why I'm scared.").

The Seventh Circuit has recognized that "stress by itself with no physical manifestations and no qualified medical diagnosis [does not] amount to a concrete harm." *Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Soyinka did not seek medical treatment:

> Q. Did you seek medical treatment?
>
> A. Where? I didn't seek medical treatment, but I was so scared. For like a week I'm not myself—not even a week. For like a month. Whenever I think of the letter, I'm just so down because I don't know. I don't know what to do I was thinking.
>
> Q. Did you seek -- did you seek any other kind of treatment?
>
> A. No.

Soyinka Dep. 31:4–13. At the deposition, Franklin's lawyer specifically asked Soyinka whether she experienced anything beyond fear and anxiety. In response, Soyinka described only emotional distress:

> Q. So, Ms. Soyinka, you said you felt scared and anxious by reading the letter, correct?
>
> A. Yes.
>
> Q. *Anything other than scared and anxious?*
>
> A. *No.*
>
> Q. You weren't negatively impacted in any way other than feeling scared and anxious? That's it?
>
> A. Yes.

9

Q. Okay. How were you scared? How did that play out in your daily life?

A. Like I said, when I received the letter, for like a month I'm not myself. Whenever I think about the letter or remember, oh, when I see the letter. So I'm just so, you know, scared. I'm very anxious about it.

Q. What do you mean you weren't yourself?

A. What did I mean what?

Q. You said you weren't yourself. How do you mean? What did you mean?

A. Like depressed. Like I have anxiety. I'm scared. That is what I mean.

Q. How were you depressed?

A. I was just down, been thinking about it.

Q. So you're saying you're scared. You're anxious. You're depressed. How would you describe yourself normally?

A. I don't know.

…

Q. I guess I'm trying to understand how you're saying you were as a result of the letter was different than you are normally. Could you describe that?

A. What I mean is like I have anxiety when I read the letter, and I was so scared, like I don't know what is going to happen. So that is what I mean.

Q. In what other instances have you felt that way, scared, anxious, depressed? In what areas of life have you felt that way other than receiving the letter?

…

THE WITNESS: No, I've never felt like that before.

Q. There is no event in your life that's occurred that made you feel --

A. No.

Q. —as anxious as you felt when you received the letter?

10

  A. Yes.

  …

  Q. Ms. Soyinka, there's no other event in your life that has made you feel as depressed as you were when you read the letter?

  A. No.

  Q. There is no other event in your life that made you feel as anxious as you felt when you read the letter?

  A. No.

  Q. Is there any further detail you could give about how you were anxious or scared or depressed?

  A. Like I can't do anything when I received the letter. I was so scared because I didn't know what was going to happen. That is what I mean.

Soyinka Dep. at 35:19–38:24. What's more, when asked about whether she had to miss any work, Soyinka responded that she was able to resume work following her day off. Soyinka Dep. at 39:1–9.

  Franklin points out that based on the deposition alone, Soyinka lacks the requisite injury for standing. Def.'s Br. at 22. This Court agrees—but as discussed, the record in this case also includes Soyinka's sworn supplemental affidavit. Franklin does not specifically argue that Soyinka violates what is often referred to as the sham-affidavit rule, but in substance Franklin wants this Court to disregard Soyinka's supplemental affidavit, so it is worth discussing when it is appropriate to set aside an affidavit during summary judgment evaluation.

11

### 3. Sham-Affidavit Doctrine

Every circuit recognizes the "sham affidavit rule." *James v. Hale*, 959 F.3d 307, 311 (7th Cir. 2020). Under this doctrine, a party cannot create a "sham affidavit"—one "whose conclusions contradict prior deposition or other sworn testimony"—simply to get past summary judgment. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). The doctrine is not limited to affidavits and depositions—the principle instructs generally that "a party cannot create a genuine issue of material fact by contradicting prior sworn testimony." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004). So when a subsequent sworn statement squarely and inherently contradicts an earlier one, the Court has the authority to disregard the "sham" statement. The rule has been applied in the context of depositions and other types of sworn statements. *See, e.g., Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995) (deposition); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993) (same); *Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335–36 (7th Cir. 1992) (sworn testimony before state agency); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991) (deposition); *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988) (deposition and sworn statement filed under local rule); *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517, 520 (7th Cir. 1988) (deposition); *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987) (deposition); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) (same); *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th

Cir. 1985) (same); *see also Donohoe v. Consolidated Operating & Production Corp.*, 982 F.2d 1130, 1136 n.4 (7th Cir. 1992) (answers to interrogatories).

Applying the sham-affidavit doctrine here, the argument in short would be that Soyinka's testimony in her affidavit about physical manifestations of the stress—that is, the hyperventilation and sleeplessness—is a sham introduced to survive summary judgment. In that situation, this Court could simply disregard the affidavit because "[t]he organizing principle of our sham-affidavit practice is simply stated: a *genuine* issue of material fact cannot be conjured out of nothing." *James*, 959 F.3d at 316 (emphasis in original). The argument would be that the deposition makes no mention of physical symptoms, and the affidavit conjures them up.

But there is a key difference in timing: the affidavit—with its declaration about physical manifestations—was filed *before* the deposition testimony. The Seventh Circuit has affirmed the application of the sham affidavit doctrine in cases where the non-moving party's *subsequent* sworn testimony introduces a new fact that inherently contradicts *earlier* testimony. *See, e.g., James*, 959 F.3d at 316–18; *Dunn*, 880 F.3d at 910–12; *United States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 466 (7th Cir. 2005) (applying the sham-affidavit rule to statements in an affidavit that contradicted earlier representations in the affiant's bankruptcy filing and tax returns). In those cases, the party moving for summary judgment asked the court to disregard the subsequent testimony, often introduced as part of summary judgment proceedings. Franklin wants this Court to do the reverse.

13

As noted earlier, Soyinka's affidavit attesting to physical symptoms came *before* her deposition. Soyinka Supp. Decl. To repeat the chronology, Soyinka first offered sworn written testimony that she experienced physical symptoms in an affidavit. Soyinka Supp. Decl. ¶¶ 8–11. Soyinka's later deposition leaves out any mention of physical symptoms. Soyinka Dep. During the deposition she does not explicitly *deny* that she had physical symptoms, but hyperventilation and sleeplessness are noticeably absent from her deposition—despite opposing counsel giving Soyinka multiple chances to offer that testimony.[4] *Id.* But because of the chronology of Soyinka's sworn statements, disregarding her earlier affidavit would not align with the rationale of the sham-affidavit doctrine. The Seventh Circuit applies the sham-affidavit doctrine to prevent "efforts to *patch up* a party's deposition with his own *subsequent* affidavit." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (emphases added). Based on the date of Soyinka's affidavit, the affidavit cannot be said to have been introduced for the purpose of remedying a prior deposition that failed to create a genuine issue of material fact. When Soyinka wrote and signed the affidavit she had not yet been deposed. Soyinka Supp. Decl.

The differences between Soyinka's supplemental affidavit and deposition nonetheless do show a change in testimony. Changes in testimony, however, usually "affect the witness's credibility rather than the admissibility of the testimony, and thus the sham-affidavit rule applies only when a change in testimony 'is incredible and

---

[4]It is worth noting that "a deposition is the time for the plaintiff to make a record capable of surviving summary judgment." *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 756 (7th Cir. 1998). Plaintiff's counsel could have re-directed Soyinka and asked about any physical symptoms and create the requisite evidence of standing, but they did not.

14

unexplained.'" *United States v. Funds in the Amount of $271,080,* 816 F.3d 903, 907 (7th Cir. 2016) (cleaned up). Affidavits are often drafted by lawyers, and it is possible that Soyinka's lawyers included hyperventilation and sleeplessness in her affidavit in anticipation of the standing issue. It is also plausible, however, that Soyinka wrote her affidavit truthfully and later in her deposition simply did not think to explicitly mention the hyperventilation and the inability to sleep. Or perhaps she simply forgot.

Here, the truth of whether Soyinka actually experienced physical symptoms beyond her psychological experiences is a question of credibility. "Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility … the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996) (cleaned up).

### 4. Evidentiary Hearing

"The existence of federal jurisdiction depends on the facts," and here, for the injury-in-fact requirement, the critical question is whether Soyinka experienced anything in response to the dunning letter from Franklin besides anxiety, fear, and confusion. *See Spuhler v. State Collection Serv.*, 983 F.3d 282, 285–86 (7th Cir. 2020) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). If Soyinka only experienced psychological harm of this kind, then she has not established an injury in fact.

The discrepancy between Soyinka's affidavit and her deposition testimony does bring into question whether she experienced physical symptoms after receiving

15

Franklin's letter. The answer to that question turns on a credibility determination, and the Court is not able to make a finding on the written record as it stands. The disparity between Soyinka's affidavit and deposition is enough to require an evidentiary hearing: "If the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). An evidentiary hearing in which Soyinka testifies is needed to make the necessary credibility determination. A bench hearing is appropriate (rather than a jury trial) because standing is a jurisdictional precondition of suit, not an issue for a jury.

## IV. Conclusion

In light of the need to hold an evidentiary hearing on the injury-in-fact requirement, the parties' cross-motions for summary judgment on the merits are terminated without prejudice. The parties shall confer and jointly file as status report, on or before April 8, 2022, reporting an estimate on how long the hearing would be and whether they wish to hold it in person (though the Court ultimately will decide whether a video hearing is preferable). The Court will review the report and contact the parties to schedule the hearing. The tracking status hearing for April 8, 2022, is reset to April 15, 2022, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

        s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2022

16